**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01425-CMA

CHRISTOPHER M. TAYLOR,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY BENEFITS

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Christopher M. Taylor's ("Plaintiff") applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § § 401-33 and 1380-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff was born on May 14, 1969.  He completed the ninth grade.  On April 23, 2004, Plaintiff was involved in a car accident, from which he alleges that some of his impairments stem.  Prior to the accident, Plaintiff had worked as a restaurant cook and as a restaurant manager.  Following the accident, Plaintiff worked part-time as a reuse technician at a renal dialysis center.  Although Plaintiff alleged an onset disability date of April 15, 2007 in his applications for disability benefits and supplemental security

income, he subsequently worked for approximately four months, 32 hour per week,

doing phone sales and clerical support for Select Lawn Care.  He also worked part-time

as a cook at a Village Inn Restaurant for approximately one month, and part-time for

over a year (~25-30 hours per week) as a cook at *The Egg and I*.

On his disability report, Plaintiff alleged that he was limited in his ability to work

due to arthritis in the neck and back, a herniated disc, and mild traumatic brain injury

("TBI").  (Administrative Record ("AR") at 122.)  He alleged that these conditions limited

his ability to work because the pain in his neck and back, as well as migraines, kept him

from bending over or standing for more than five hours.  (*Id.*)

After his application was initially denied, Plaintiff filed a request for a hearing,

which was held before Administrative Law Judge ("ALJ") Richard J. Maddigan on June

4, 2009.  (AR at 25-36.)  At the hearing, Plaintiff testified that he had difficulties sitting,

lifting, and standing for prolonged periods due to pain.  However, Plaintiff testified that

he could be on his feet for up to four hours a day out of an 8-hour workday.  (AR at

27-28.)  After the ALJ questioned Plaintiff about his work at the *Egg and I*, he asked

Plaintiff if he would be able to perform a less demanding job.  Plaintiff responded,

"I would try.  I, I don't know.  I mean repetitive lifting – ."  The ALJ stated that there

would be no repetitive lifting, and Plaintiff responded "okay."  (AR at 31.)

Doris Shriber, a vocational expert ("VE"), also testified at the hearing.  Asking her

to assume that Plaintiff could lift 10 pounds frequently, 20 pounds occasionally, stand or

walk up to four hours in the day with an at-will sit/stand option, and only perform simple,

unskilled tasks in a low stress environment, the ALJ asked whether Plaintiff could

perform any of his prior relevant work.  The VE opined that Plaintiff would not be able

to perform any of his past relevant work. (AR at 32.)  After the ALJ added a restriction to

the hypothetical that Plaintiff could perform only occasional reaching, the VE opined that

the Plaintiff could work as a surveillance system monitor, call out operator, or counter

clerk.  (AR at 35.)

Pursuant to the five-step sequential evaluation process established by the

Commissioner for determining whether a claimant is disabled, the ALJ issued a decision

on October 8, 2009, finding that Plaintiff was not disabled during the time period

relevant from this case, from April 15, 2007 through the date of decision.  (AR at 11-22.)

At step two, the ALJ found that Plaintiff has the following impairments which in

combination are severe: degenerative disc disease with stenosis, TBI with systems

of mood disorder and cognitive disorder, and obesity.  At step four, the ALJ found that

Plaintiff had the residual functional capacity ("RFC") "to perform light work  as defined

in 20 CFR 404.1567 . . . except that [Plaintiff] requires an at will sit/stand option; can

perform reaching only occasionally; can perform simple, unskilled tasks with low

stress."[1]

Given this RFC, the ALJ found that Plaintiff was not capable of performing any of

his past relevant work.  However, the ALJ found that there were other jobs that existed

in significant numbers in the national economy that Plaintiff could perform.  Specifically,

_____

[1] 20 C.F.R. § 404.1567(b) defines "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

the ALJ found that Plaintiff could work as a surveillance system monitor, call operator, or counter clerk.  (AR at 21-22.)

Plaintiff appealed the ALJ's decision to the Appeals Council.  The Appeals Council denied his request for review, making the decision of the ALJ the final administrative decision.  On June 1, 2011, Plaintiff filed this civil action, seeking judicial review of the Commissioner's final decision.  (Doc. # 1.)  On November 7, 2011, Plaintiff filed his Opening Brief (Doc. # 11).  The Commissioner responded on December 7, 2011, and Plaintiff replied on December 22, 2011.  (Doc. ## 12, 13.)

## II.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## III.  ANALYSIS

In this appeal, Plaintiff raises two issues for the Court's review: (1) whether the ALJ failed to properly determine Plaintiff's RFC, and (2) whether the Commissioner

failed to meet his burden at Step 5 by showing that Plaintiff could perform work that exists in substantial numbers in the national economy.  (Doc. # 11 at 4.)

**A.    WHETHER THE ALJ FAILED TO PROPERLY DETERMINE PLAINTIFF'S RFC**

Plaintiff, in his opening brief, has asserted ten errors in the ALJ's assessment of his RFC.  Unfortunately, Plaintiff fails to explain why many of these errors are prejudicial or even legally relevant.  Further complicating the Court's review, Plaintiff has failed to support many of his arguments with relevant authority.  For example, in paragraph 3, Plaintiff asserts that the ALJ should have asked Dr. Helffenstein to fill out a mental RFC form.  (Doc. # 11 at 20.)  Plaintiff, however, fails to explain why the ALJ would have been required to do this, and the Court is aware of nothing in the Social Security regulations that compels a medical source to submit a specific form to the Social Security Administration.  Although the Court does not specifically address all of Plaintiff's arguments in this Order, the Court has considered all of Plaintiff's arguments and finds that none merit remand.

1.    <u>Alleged Failure to Develop the Record</u>

Plaintiff's principal argument appears to be that the ALJ did not fulfill his duty to develop the record in forming his RFC assessment.  Although the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC," SSR 96-8p, 1996 WL 374184, at *5, the Court finds that the record before the ALJ was sufficiently developed to support his RFC assessment.

In his decision, the ALJ gave "considerable weight" to the opinion of Dr. Louis Hoffman, stating that it "was based on clinical findings with reasoned bases provided for the claimant's limitations." (AR at 20.)  After conducting an examination, Dr. Hoffman found that although Plaintiff exhibited "some sporadic problems in his cognitive functioning . . . there is no reason to believe that his cognitive or memory functioning would interfere with his ability to maintain employment." (AR at 438.)  Dr. Hoffman assigned a Global Assessment of Functioning score of 68, which indicates "some mild symptoms . . . but generally functioning pretty well." *Peterson v. Sun Life Assur. Co. of Can.*, 2012 WL 987524, at *2 (10th Cir. Mar. 22, 2012) (unpublished).

Although the focus of Dr. Hoffman's examination was on Plaintiff's cognitive and memory functioning, Dr. Hoffman expressed concern regarding Plaintiff's emotional functioning.  He noted that Plaintiff had reported "some rather intense depression" and speculated that his emotional functioning "**may** interfere with his ability to maintain employment." (AR at 439) (emphasis added).  Dr. Hoffman suggested further evaluation, which was noted by the ALJ in his decision.  (AR at 19, 439.)

Plaintiff contends that the ALJ erred by not further investigating Dr. Hoffman's belief that Plaintiff may have problems maintaining employment because of his emotional functioning.  *See* 20 C.F.R. § 404.1512(e)(1) (Commissioner must contact medical sources if additional information is needed to resolve conflict or ambiguity); 20 C.F.R. § 404.1512(f) (ALJ may order a consultative examination if re-contacting medical source still does not provide substantial evidence upon which to base an RFC finding).

The Tenth Circuit instructs that an ALJ is obligated to base his RFC findings on record evidence.  *See Fleetwood v. Barnhart,* 211 F. App'x 736, 740-41 (10th Cir. 2007).  The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  *Id.* (quoting SSR 96-8p).  Because a disability hearing is nonadversarial, the ALJ is obligated to develop the record even when the claimant is represented.[2]  *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).  In *Fleetwood*, the Tenth Circuit found that although the claimant's counsel did not request additional record development, "the need for additional evidence [was] so clearly established . . . that the ALJ was obliged to obtain more evidence regarding [the plaintiff's] functional limitations."  211 F. App'x at 741.  In *Fleetwood*, the only medical evidence on record was a check-the-box form.  In this case, by contrast, there was significant medical evidence concerning Plaintiffs' emotional functioning on which the ALJ could reasonably base his RFC assessment.

In December of 2007 and January 2008, Plaintiff was examined by Dr. Dennis Helffenstein, who prepared a lengthy report on March 7, 2008.  Although Plaintiff rated his depression as a 7 on a 10-point scale, Dr. Helffenstein observed that "[t]here were no overt indications of anxiety or depression during the evaluation process.  There was no irritability."  (AR at 496.)  Dr. Helffenstein also administered a Beck Depression Inventory-II exam.  (AR at 503.)  Although Dr. Helffenstein opined that Plainitff was

---

[2] It is unclear whether Plaintiff was represented by an attorney.  In the preface to the transcript of the hearing, it is stated that Plaintiff was "represented by Ligita Bardulas, Attorney."  (AR at 25).  However, in the first paragraph of the decision, the ALJ stated that "claimant is repre-sented by Ligita S. Bardulis, a non-attorney representative."

experiencing "some moderate level of emotional and psychological distress . . . there were a number of indicators to suggest that emotional factors did not negatively impact his test scores." (AR at 506.)  Dr. Helffenstein ultimately concluded that Plaintiff would be limited to part-time work due to his ongoing problems with fatigue and expressed concern for his cognitive functioning (AR at 508); however, he did not opine that Plaintiff would be functionally restricted by his "moderate feelings of depression." (AR at 507.)

In his decision, the ALJ found that Plaintiff's mental impairments were not "severe," noting that the medical records "reflected minimal effects or limitations with no actual diagnosis and treatment other than the consultative examiner's speculations." (AR at 14.)  Further, the ALJ noted the opinion of Dr. Douglas Hanze (AR at 443-455) , who found no functional limitations stemming from Plaintiff's mental impairments as well as Dr. Helffenstein's observation that "there were no overt indications of anxiety or depression during the evaluation process." (AR at 18.)  The Court also observes that in his disability report Plaintiff did not claim that he suffered from depression or that it affected his ability to work. (AR at 122.)

Thus, although Dr. Hoffman expressed concerns about Plaintiff's emotional functioning, there was ample evidence in the record to support the ALJ's conclusion that Plaintiff was not functionally impaired as a result of his mental health issues.  Therefore, the ALJ was not obligated to develop the record further.  *See Cowan v. Astrue*, 582 F.3d 1182, 1187 (10th Cir. 2008) ("there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination.").

2.    Alleged Failure to Properly Weigh Medical Opinion

Plaintiff appears to contend that the ALJ failed to properly weigh the March 7, 2008 opinion of Dr. Helffenstein.  The ALJ is required to weigh every relevant medical opinion he receives using all factors in 20 C.F.R. § 404.1527.  However, the ALJ is not required to supply a formalistic recitation of all the factors.  *Oldman v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).   The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In his decision, the ALJ found that "[l]imited weight is given to Dr. Helffenstein who accounted for the claimant's limitations; however, the GAF assigned is inconsistent with severe vocational expectations."  (AR at 20.)  In his report, Dr. Helffenstein assessed Plaintiff with a GAF score of 60, which is indicative of moderate symptoms, bordering on mild symptoms.  *See Segura v. Barnhart*, 148 F. App'x 707, 709 n.2 (10th Cir. 2005) (unpublished) ("A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning.")   It was reasonable for the ALJ to view Dr. Helffenstein's assessment of Plaintiff's GAF score as inconsistent with the rest of Dr. Helffenstein's opinion, and to accord his opinion less weight as a result of this inconsistency.  Thus, the Court finds that the ALJ sufficiently explained why he accorded Dr. Helffenstein's opinion only limited weight.

3.    Specific Procedures for Evaluation of Mental Impairments

The Social Security regulations set forth specific procedures for evaluating the

severity of mental impairments.  The regulations identify four broad functional areas in

which to rate the degree of a claimant's functional limitation: "Activities of daily living;

social functioning; concentration, persistence, or pace; and episodes of decompen-

sation."  20 C.F.R. § 1520a(c)(3).  When a claimant has **no** limitations or **mild**

limitations in the first three functional areas and **no** episodes of decompensation,

the mental impairment is generally considered non-severe.  20 C.F.R. § 1520a(d)(1).

Plaintiff appears to argue that the ALJ did not evaluate Plaintiff's mental health

impairments in accordance with the framework set forth in § 1520a.  (Doc. # 11 at 21.)

However, the ALJ found that Plaintiff had no more than mild limitations in activities of

daily living, social functioning and ability to maintain concentration, persistence and

pace, and no episodes of decompensation.  Thus, in accordance with the regulations

set forth in § 1520a, the ALJ concluded that Plaintiff's mental impairments were "non-

severe."[3]  (AR at 14.)  The ALJ's thorough discussion of the record evidence relating to

Plaintiff's mental health impairments supports this finding.  (AR at 18-20.)  Plaintiff does

not appear to argue that the ALJ ignored any evidence, and the decision shows that the

ALJ carefully considered the entire record in making his RFC assessment.  Indeed,

other than Dr. Hoffman's speculation, there is nothing in the record that would suggest

---

[3] To the extent that Plaintiff argues that the ALJ erred by finding that these mental impairments were non-severe, such an argument would be legally irrelevant because "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished).

that Plaintiff's mental health impairments would cause any functional limitations on his ability to work.

       4.    <u>Alleged Failure to Assess Credibility</u>

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to produce the types of alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."  (AR at 17.)

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").  The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence he relied upon in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

The Court finds that the ALJ satisfied his obligation to provide specific and legitimate reasons in support of his credibility determination.  The Court does note that the ALJ cited some examples of inconsistency that were not legitimate criticisms, *e.g.*, the ALJ discussed Plaintiff's failure to disclose certain jobs on his disability report form; the form was filled out before Plaintiff had begun those jobs and he later partially disclosed some of his work.  However, the ALJ did provide other specific, legitimate examples to support his credibility determination.  For example, the ALJ noted that Plaintiff referred to his work at a dialysis clinic when filling out his disability form in July of 2007, but did not disclose his work for Select Lawn Care.  (AR at 123.)  The ALJ also noted that Plaintiff engaged in a wide variety of activities, including part-time work activity, which undermined his claim of disability.  (AR at 16.)  For example, Plaintiff told Dr. Mustafa that he was involved in the care of his three children, walked his dogs, and tried to fish frequently.  (AR at 371.)  Further, although Plaintiff testified at the hearing that he did not know if he could lift 20 pounds, he was treated for elbow pain in 2008 after helping a friend move a large, 42-inch television.  (AR at 16, 473.)

Thus, the ALJ reasonably found Plaintiff's activities indicated a greater level of functional abilities than Plaintiff's statements suggested, and this finding was supported by specific and legitimate examples.

## B.   WHETHER THE ALJ FAILED TO MEET HIS BURDEN AT STEP 5

At step five of the sequential evaluation procedure, the ALJ must decide whether the claimant can perform any other gainful and substantial work that exists in the national economy.  The Commissioner has the burden at step five of showing that the

claimant is capable of performing such work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  This determination is made on the basis of the claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520(g)(1).

As Plaintiff acknowledges, an ALJ may rely on the testimony of a VE to satisfy the Commissioner's burden at step-five, provided that the hypothetical includes all the limitations that the ALJ ultimately included in his RFC.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (noting that the VE's answer to a hypothetical question that included all the limitations the ALJ ultimately included in his RFC assessment provided a proper basis for the ALJ's disability decision).  Citing the hearing testimony of the VE, the ALJ found that Plaintiff could perform the position of a surveillance system monitor (DOT # 370.367-010, sedentary, SVP 2), with 400 jobs in Colorado and 13,500 jobs available nationally.  The ALJ also found that Plaintiff could perform the position of a call out operator (DOT 237.367.014, sedentary, SVP 2) with 180 jobs in Colorado and 12,100 jobs nationally, and the position of a counter clerk (DOT # 249.366-010, light, SVP 2) with 1,000 jobs in Colorado and 50,600 jobs nationally.  (AR at 21.)

Plaintiff asserts that the ALJ erred because the VE was not asked if the jobs were compatible with their description in the *Dictionary of Occupational Titles* ("DOT").  Specifically, Plaintiff contends that the position of Counter Clerk as described in the DOT is incompatible with the ALJ's RFC assessment insofar as it provides that Plaintiff requires an "at will sit/stand option."

The Tenth Circuit has found that it can be error when an ALJ fails to inquire into whether there are any conflicts between the VE's testimony about the job requirements

for the jobs identified and the job descriptions in the DOT.  *See Poppa v. Astrue*, 569

F.3d 1167, 1173 (10th Cir. 2009).  However, in this case, although the job description

in the DOT of a counter clerk does not specifically account for the need for a sit/stand

option, there is nothing in the DOT description that would preclude such an accommo-

dation.[4]  Further, the VE testified at the hearing that the position of a counter clerk could

accommodate an at will sit/stand option. (AR at 34.).  Plaintiff has not demonstrated

the existence of any conflicts between the VE's testimony and the DOT description of

a counter clerk.  Thus, the Court finds that the ALJ's failure to inquire into conflicts

between the VE's testimony and the DOT was harmless.  *See id.* (finding error harmless

because there were no conflicts).

Further, even if there were a conflict between the position of counter clerk and

the RFC assessment, any error would nevertheless be rendered harmless because

the ALJ also identified two other jobs that exist in significant numbers in the national

economy, as a call out operator and as a surveillance system monitor.  Although

Plaintiff asserts that he could not perform the surveillance system monitor job because

it "would likely require a security clearance beyond the claimant's means," (Doc. # 13

_____

[4] The duties of a counter clerk are:

"Receives film for processing, loads film into equipment that automatically processes film
for subsequent photo printing, and collects payment from customers of photofinishing estab-
lishment: Answers customer's questions regarding prices and services. Receives film to be
processed from customer and enters identification data and printing instructions on service log
and customer order envelope. Loads film into equipment that automatically processes film, and
routes processed film for subsequent photo printing. Files processed film and photographic
prints according to customer's name. Locates processed film and prints for customer. Totals
charges, using cash register, collects payment, and returns prints and processed film to
customer. Sells photo supplies, such as film, batteries, and flashcubes."  DICOT 249.366-010.

at 5), Plaintiff provides no authority to support this conclusory assertion and the DOT definition does not discuss security clearance requirements.  *See* DICOT 370.367-010.

In *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992), the Tenth Circuit indicated that the relevant test to determine the existence of a "significant number" of jobs is either the number of jobs in the regional economy or in the national economy. Here, Plaintiff has only cited the number of regional jobs available.  However, the Court must also consider the number of jobs available nationally to determine whether the positions identified by the ALJ amount to a significant number.  *See Raymond v. Astrue*, 356 F. App'x 173, 178 n.2 (10th Cir. 2009) (unpublished).

In a recent opinion, the Tenth Circuit declined to remand based on claimant's challenge to the number of jobs available in Colorado where the plaintiff failed to argue that number of jobs available nationally was also insignificant.  *See Wendelin v. Astrue*, 366 F. App'x 899, 902-904 (10th Cir. 2010) (unpublished).  As in *Wendelin*, Plaintiff did not argue that the number of nationally available jobs identified by the ALJ was insignificant.  Between the surveillance system monitor job and the call out operator, the ALJ identified over 25,000 jobs available nationally.  The Court finds that this constitutes a "significant number" of jobs that Plaintiff is capable of performing.  *See Botello v. Astrue*, 376 F. App'x 847, 850 (10th Cir. 2010) (unpublished) (declining to remand based on plaintiff's challenge to number of jobs when jobs in Colorado equaled 757, but there were 67,250 jobs in the national economy); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number.").

## IV.  **CONCLUSION**

For the reasons stated above, the Court finds that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence.

Accordingly, it is ORDERED that the ALJ's denial of disability insurance benefits and supplemental security income is AFFIRMED.  It is FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.

DATED:  April __30__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge